Annis *v.* Upton.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, April 1, 1873. *Mullin, Talcott* and *E. D. Smith,* Justices.]

———•◆•———

## ANNIS *vs.* UPTON.

A defendant is as much concluded by the amount of damages he claims in his counter claim as a plaintiff would be by the damages claimed in his complaint.

If a referee allows to a defendant a larger sum than he has claimed as damages, in his counter claim, this is an error for which the judgment will be reversed; unless the defendant cures it by stipulating to reduce the amount of the counter claim allowed to him.

It would be dangerous, in the extreme, to allow a positive affidavit of the service of papers in the course of legal proceedings to be overthrown by anything less than positive proof, or the most convincing circumstances. *Per* TALCOTT, J.

Circumstances which were held insufficient, in this case, to overcome the positive oath of the plaintiff's attorney as to the service of a reply,

Annis *v.* Upton.

A PPEAL from a judgment in favor of the plaintiff, entered on the report of a referee.

*Messinger & Jenkins*, for the appellant.

*A. C. Hyde*, for the respondent.

*By the Court*, TALCOTT, J. This action is brought to recover a balance alleged to be due for freight on the transportation by canal of a cargo of apples from Spencerport to Schenectady. The balance claimed by the plaintiff was $328.75. The defendant put in an answer, in which he set up, by way of counter claim, that the plaintiff received from him 2,700 barrels of apples and only delivered 2,625, and claimed to apply in reduction of the claim of the plaintiff $247.50, as the value of the apples not delivered. Before putting in his answer the defendant had made an offer to allow the plaintiff to take judgment for $82.50, and costs, which was not accepted. The referee, by his findings, established the counter claim at $262.50. This the referee did by allowing a larger price for the seventy-five barrels of apples missing, than the defendant had claimed as his damages on account of the matter set up in his counter claim. This was clearly erroneous.

There can be no doubt but that a defendant is as much concluded by the amount of damages he claims in his counter claim as a plaintiff would be by the damages claimed in his complaint. If a jury finds a verdict for a greater amount of damage than the plaintiff claims, this is an error for which the judgment will be reversed, unless the plaintiff cures it by remitting the excess. If this was the only error in the case it might perhaps be cured by requiring the defendant to stipulate to reduce the amount of the counter claim allowed to him. But there are other errors which cannot be thus cured. On the trial it was claimed by the defendant that his counter

claim was admitted, because the plaintiff had not replied to it. Evidence touching the facts alleged in the counter claim was taken conditionally, and the question as to whether any reply had been served was to be determined by the referee upon evidence afterwards to be furnished to him. The only evidence on the subject seems to have been by affidavit on both sides. The plaintiff's attorney resided in Oneida county, and the attorney of the defendant at ——. The former produced and submitted to the referee the original reply denying the allegations of the counter claim, duly sworn to by the plaintiff, on the 22d day of January, 1872, together with his own affidavit, positively stating a service of the reply on the defendant's attorney by mail on the 22d of January, 1872, and stating the facts requisite to an effectual mail service under the rule. This affidavit was made in March, 1872, after the trial had commenced. On the other hand the defendant's attorney submitted his own affidavit stating that he had never received any reply, and further setting forth certain facts regarding two motions made by the defendant to change the place of trial, the first of which was made on the 14th of February, 1872. This was denied, with leave to renew, on further affidavit, excusing the delay in making the motion. In the affidavits on the part of the defendant on these motions the issue was stated to have been joined on the 21st day of December, 1871. It does not appear that any affidavits were presented on the part of the plaintiff to oppose the first of said motions, and the defendant was apparently beaten in the motion on his own showing. The defendant's attorney, however, swears that there were affidavits read on the part of the plaintiff when the motion was renewed; but the purport of such affidavits is not stated. The defendant's attorney states on information and belief as to the first motion, and on his own knowledge as to the second, that the plaintiff's attorney did not dispute the allegation in the

Annis v. Upton.

·defendant's affidavit as to the date of the issue, at the time when the motions were made. This amounts to nothing. It does not appear that it was at all material on those motions for the plaintiff's attorney to dispute the allegation of the•attorney for the defendant in that behalf.

It appears, however, that on the 30th of December, 1871, the plaintiff's attorney noticed the cause for trial at a circuit appointed in Oneida for the 22d of January, but before the time arrived the cause was stipulated over the circuit. This is a circumstance tending to show that at the time when the notice of trial was given, the plaintiff did not contemplate putting in a reply. This might have arisen from inadvertence, or from a belief on the part of the plaintiff's attorney that no reply was necessary in the case, as he now insists, as matter of law. But it does not avail much by way of showing that the plaintiff did not on the 22d of January intend to reply, as against the fact proved by the official jurat to the reply, which is dated on that day, and the positive oath of the plaintiff's attorney that he mailed the reply on that day. On this evidence, which is recapitulated by the referee in his report, he finds that the plaintiff's attorney is mistaken in his affidavit, and that no reply was in fact served. We think the referee was mistaken in such finding, and that the circumstances alluded to were not sufficient to overcome the positive oath of the plaintiff's attorney as to the service of a paper in the course of practice, and of which it is to be presumed he had a memorandum in his register made at the time. It would be dangerous, in the extreme, to allow a positive affidavit of the service of papers in the course of legal proceedings to be overthrown by anything less than positive proof, or the most convincing circumstances.

We think, also, there were errors made in the rejection of testimony offered by the plaintiff tending to show that he had not in fact received on his boat the

seventy-five barrels of apples. The tallying on to the boat seems to have been done in a loose manner, and the fact that another boat, loaded by the defendant at the same time, overran more than seventy-five barrels in connection with the evidence tending to show that the plaintiff admitted that if the latter boat overran, then that the plaintiff did not in fact receive the seventy-five barrels in dispute, tended to show that the defendant had not received the seventy-five barrels. The shipping receipt given by the plaintiff did not conclude him ; as a receipt, it was open to explanation and contradiction. By holding that no reply had been served to the counter claim, the referee has deprived the plaintiff of his right to make the issue.

The judgment is reversed and a new trial ordered, costs to abide the event, and a new referee to be substituted.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, April 1, 1873. *Mullin, Talcott* and *E. D. Smith,* Justices.]